John J. Carter, Appellant, v. Producers' Oil Company, Limited, J. W. Lee, Chairman, and R. J. Straight, Secretary and Treasurer.

*Limited partnership associations—Transfer of shares—Acts of June 2, 1874, and June 25, 1885.*

The Act of June 25, 1885, P. L. 182, amending section 4 of the Act of June 2, 1874, P. L. 271, relating to membership in limited partnership associations, makes no distinction between a transferee of stock who is a member of the association, and one who is not; and therefore a member who purchases additional shares of the association sustains the same relation to such shares as purchasers who are not members, and he cannot vote such shares unless elected to membership upon them.

A limited partnership association is not restricted, in the adoption of by-laws, rules and regulations for its government, to such as it is in the power of a corporation to prescribe. Although it has some of the qualities of a corporation, yet it is, nevertheless, a partnership association, governed by the statutes under which it was organized; and, under the acts of 1874 and 1885, it has power to adopt the rule that "any person being a member of the association who becomes the transferee of additional shares, shall have no right to participate in the subsequent business or profits of the association, or to vote upon such additional shares, unless elected to membership thereupon."

Argued May 4, 1897. Appeal, No. 173, Jan. T., 1897, by plaintiff, from decree of C. P. Warren Co., June T., 1896, No. 18, dismissing bill in equity. Before STERRETT, C. J., WILLIAMS, McCOLLUM, MITCHELL and DEAN, JJ. Affirmed.

Bill in equity to enforce the alleged rights of a transferee of shares in a limited partnership association.

The facts appear by the opinion of the court below, by NOYES, P. J., which is as follows:

### FINDINGS OF FACT.

1. The Producers' Oil Company, Limited, is an association organized under the act of assembly of the commonwealth of Pennsylvania, approved June 2, 1874, and its supplements, with a capital stock of $600,000, divided into 60,000 shares of a par value of $10.00 each, and the term of said association is twenty years from June 9, 1891.

2. The principal office of said association is situated at Warren, Pa., and the following are its officers: Chairman, J. W. Lee; Treasurer, R. J. Straight; Secretary, William L. Curtis.

3. The plaintiff, John J. Carter, is a member of said association, elected on June 5, 1893. A certificate for 300 shares of the capital of said association was issued to him on the 9th day of May, 1893, and said certificate is in the form marked exhibit "B," attached to plaintiff's bill; the form of transfer on said certificate was similar to that marked exhibit "C," attached to plaintiff's bill.

4. In April, 1894, and prior to the 9th of that month, the plaintiff received from the National Transit Company certificates representing 13,013 shares of the capital of the defendant company, with the blank transfers on the back of each certificate, signed by the original holders thereof. He had at the time made an offer to purchase the certificates, but it was not then and never was accepted. On April 9, he procured the secretary of the company to transfer these shares to him upon the books of the company and to issue new certificates in his own name, numbered respectively 803 and 804, and he is now registered on the books of the company as the owner of said shares, but was not re-elected to membership in respect thereto. In obtaining this transfer he made no specific representations as to ownership, but he did not disclose to the secretary that he was not the owner thereof, nor that he in fact held them as bailee of the National Transit Company. At a meeting of the company, held April 11, 1894, called specially to vote upon a proposition to sell certain property of the Producers' Oil Company, Limited, to the United States Pipe Line Company, the plaintiff appeared, claimed to be the owner of the stock so transferred to him, and his vote upon said stock was received and counted. Objection was, however, made, and before the vote was taken the following resolution was passed by the meeting, all the members present voting in the affirmative, except the plaintiff and one other:

"Resolved, That the counting of votes and the computation of the shares of stock at this meeting for and in behalf of transferees of such shares who are members only by virtue of holding shares for lesser amounts and upon which holding of lesser amounts they were heretofore elected to membership, shall not be understood as a concession by this association that such counting and computation can be demanded as a right."

At a meeting of the company held June 5, 1894, the plaintiff again appeared, claimed to be the owner of the said shares and the right to vote thereon, and his vote was received and counted upon the question whether certain amendments to the rules and regulations of the company should be adopted; but after the adoption of the amendments, which are hereinafter recited, the tellers appointed to conduct an election for managers of the company refused to count his vote as to the said 13,013 shares. In the latter part of May, 1895, the plaintiff redelivered said shares to the National Transit Company, his offer for the purchase thereof being definitely refused, by indorsing and delivering the new certificates, Nos. 803 and 804.

5. In January, 1896, the plaintiff purchased from the National Transit Company 29,764 shares in the capital stock of the defendant company, which included the 13,013 shares already transferred to him on its books, and subsequently, from other persons 131 other shares, making in all 29,895 shares, in addition to his original 300 shares. All of the shares so purchased were valid and legal shares, and had been formerly owned by members of the defendant company who had duly executed the transfer by signing the blank printed on the back of each certificate, but neither the National Transit Company nor any of the other persons from whom the plaintiff purchased were at any time members of the Producers' Oil Company, Limited.

6. The plaintiff is the bona fide owner of all the said 29,895 shares, and the said shares are valid outstanding shares of said company.

7. Prior to filing his bill, the plaintiff, John J. Carter, demanded of the officers of the Producers' Oil Company, Limited, a transfer to him upon the books of the company of the said 16,882 shares which had been purchased by him, not already standing in his name, and the said transfer has not been made.

8. The plan for the formation of the Producers' Oil Company, Limited, was proposed by the general assembly of an association of oil producers, known as the Producers' Protective Association, or, commonly, by the abbreviation, P. P. A. having a general assembly and a considerable number of local assemblies subject thereto. By the direction of the general assembly, papers in the language of exhibits "D" and "E," attached to the amendment of the defendant's answer to the

original bill, were sent out by authorized agents to each of the local assemblies of the P. P. A. and subscriptions thereto solicited. The papers were explained at the meetings of the several local assemblies to which they were submitted, and it was stated that similar papers had been or were about to be presented at each other local assembly. The subscribers to the said papers at each local assembly elected one of their number as their trustee or representative to act in the formation of the Producers' Oil Company, Limited, as provided in said papers. All of the subscribers to the papers referred to paid to the trustees so chosen a part or the whole of their respective subscriptions. The plaintiff subscribed one of the papers in the form mentioned, presented at the local assembly at Titusville, of which he was a member, attended the meeting of the subscribers at that place and participated in the election of Roger Sherman as trustee or representative. The trustees so chosen, 32 in number, met at Bradford and there signed the statement required by the act of June 2, 1874, creating the Producers' Oil Company, Limited. After the organization of the company the plaintiff, upon the payment in accordance with the terms of the paper of his subscription for 300 shares, was elected to membership, and a certificate for that amount of capital was issued to him. The other subscribers were in like manner elected upon payment of their subscriptions. In some cases assignees of the original subscribers were elected in their stead. It does not appear that all the persons who were elected members of the company signed these papers, or any of them, nor that they all expressly assented to the same.

9. At the meeting of the trustees at which the company was organized, the said trustees, being then the only members of the defendant company, duly adopted certain rules and regulations which are correctly transcribed in the minute book of the company between pages 17 and 32 thereof, and after the adoption of said rules and regulations each of the members of the company subscribed to the same in attestation of his consent and agreement thereto.

10. At the meeting of the members of the company held June 5, 1894, certain amendments to the said rules and regulations were adopted by the vote of a majority in number and value of interest of the members, which amendments are cor-

rectly set forth on pages 35 and 36 of the minute book above referred to, and include the following:

## "XXV."

"No member of this association shall sell or transfer any interest in capital or shares of stock to any person not a member in good standing of the Producers' Protective Association, unless with the approval in writing of a majority of the board of managers. No transferee of any interest in capital or shares of stock shall be entitled to participate in the subsequent business or profits of the association, or to vote on such interest or shares so transferred, unless elected to membership therein by a vote of a majority of the members in number and value of their interests.

"Any person being a member of the association who becomes the transferee of additional shares, shall have no right to participate in the subsequent business or profits of the association, or to vote upon such additional shares, unless elected to membership thereupon, following such transfer, in the manner provided above."

11. Prior to the meeting of the company held April 11, 1894, it was the custom and practice of the officers of the defendant company having charge of its books to permit transfers or shares in the company from one member to another without requiring such member to be first elected to membership, specifically, as to the stock so transferred to him. I find no evidence that any member to whom additional shares were transferred was ever elected to membership specifically as to such shares prior to June 5, 1894. Nor do I find any evidence that any member was permitted to vote upon shares so acquired by transfer without a second election prior to April 11, 1894.

12. The National Transit Company is one of the companies affiliated with the Standard Oil Company, and controlled by what is popularly known as "The Standard," "The Standard Oil Trust," or the "Standard Trust." The Standard Oil Trust and its affiliated companies are engaged in producing, transporting, refining, piping and selling petroleum and its products, in competition with the defendant company, the various branches of the business being conducted by separate companies. The plaintiff, at the time of his purchase of the shares in controversy

in this case, was a shareholder in the Standard Oil Trust, and otherwise identified in interest with that organization. At the time he purchased the stock he gave to the representatives of the Standard Oil Trust assurances that if he secured control of the defendant company, he would give to the Standard the same facilities for the purchase of oil transported and produced by the company, which were accorded to the so-called "Independent" Refiners and others. He avows his intention, if placed in control, to change the policy of the company from what he terms "gad fly" competition with the Standard, to such competition as he believes will not be objectionable to that organization.

13. The plaintiff at the time of the purchase of the stock in question was and continues to be a member of the Producers' Protective Association, in good standing ; but by reason of his connection with the Standard Oil Trust, he was not qualified for membership in that organization and was subject to expulsion therefrom.

14. A considerable number of shares in the defendant company had been forfeited for nonpayment of subscriptions prior to March 27, 1894. On that day the board of managers adopted the following resolution :

" Resolved, that the stock forfeited by the company, and now its property, may be sold at par by the treasurer for cash to parties known or ascertained to be friendly to the company and its interests, who are qualified to become shareholders therein."

On April 10, 1894, the managers sold and transferred to O. F. Hoffman 5,900 shares of this forfeited stock which was paid for in cash at par.. The money was furnished by another, and Hoffman soon after transferred the shares to a syndicate at the request of the person who furnished the money. This sale was made by the managers with the expectation and belief that Hoffman would vote in opposition to the plaintiff and in favor of the action desired by them, and Hoffman did so vote at the meeting of April 11, without being elected to membership in respect to such stock, he being already a member. April 11, the managers adopted the following resolution :

" Resolved, that (four managers hereby concurring therein) the treasurer be authorized at his discretion to purchase for our association full paid interest in capital in the Producers' Oil Company, Limited, at private sale, not to exceed in the aggre-

gate three thousand shares, at a price not exceeding par value thereof, as authorized by Rule 10 of the rules and regulations of this association."

On the same day, the managers issued to Myron Waters 2,000 shares of the capital of the company at par, for cash, and said Waters voted said stock at the meeting held on that day, in accordance with the wishes of the managers and other members of the company. On April 24, following, the said stock was transferred back to the said company by said Waters. The said Waters had not been elected to membership in the company. On April 24, the managers issued to said Waters 1,300 shares of said stock, and on June 1, 700 additional shares; and said Waters voted on the same at the meeting and election held June 5, 1894. On June 9, 1894, he retransferred to the company 1,300 shares, and on August 8, the other 700. The said stock was issued to said Waters to enable him to vote at said meetings in furtherance of the purpose of the managers of the company, and in opposition to those of the plaintiff, and was not in good faith a sale to said Waters of said stock.

15. The officers and managers of the defendant company were requested by the plaintiff to furnish him a list of the shareholders entitled to vote at the meeting of April 11, 1894, but neglected to do so until just before the opening of the meeting, when a partial list was furnished him. The plaintiff filed at the meeting written protests against the votes of Hoffman and Waters.

16. At the meetings of the company, on April 11, and June 5, 1894, the persons present were generally opposed to the action desired by the plaintiff, and some harsh expressions were used by individuals in conversation respecting his conduct. He was accorded his full rights on the floor by the presiding officer. All his motions were received and acted upon; his protests were duly filed, and a true and impartial record of the proceedings was kept by the officers.

17. The plaintiff at the meeting on June 5, 1894, voted and protested against the adoption of the amendment to Rule 25, hereinbefore quoted.

Except in so far as the several requests for findings of fact, presented on the part of the plaintiff and on the part of the defendant, are adopted in these findings, they are refused.

## OPINION OF THE COURT.

I have found as a fact that the plaintiff is the bona fide owner of the stock which he seeks by his bill to have transferred to him. In so doing, I have negatived so much of paragraph (*c*) of the defendants' 5th proposition of law, as avers that the plaintiff has not overcome the responsive denial of the answer as to the bona fides of his ownership. The proof of ownership offered by the plaintiff consisted of the production of the certificates issued by the Producers' Oil Company, Limited; evidence establishing their genuine character, and the due execution by the holders thereof of the transfers printed on the back of the certificates. To this was added his own testimony that he purchased the shares from the National Transit Company and paid for the same in cash with his own money, and that no other person had any interest therein. He produced the check by which payment was made, the receipt of the National Transit Company, and other documents corroborating his testimony. This was certainly enough in the absence of countervailing proof to establish his unqualified ownership against the general and vague denial of the answer. It was declared in Riegel v. American Life Insurance Co., 153 Pa. 134, the present Chief Justice delivering the opinion, that an averment of a fact in an answer which could not in the nature of the case be within the personal knowledge of him by whom it is sworn, and which is no more than " an expression of his strong conviction of its existence, or what he deems an infallible deduction from the facts which were known to him," is not responsive in the sense that it is evidence in his favor, so as to put the plaintiff upon proof by two witnesses. But it is unnecessary to invoke this principle, for the proof was abundant, and practically uncontradicted. The proposition, however, raises the question of the good faith of the plaintiff in bringing this suit, and this is a broader question. It is said that he is " shown to be acting in conspiracy with the Standard Oil Trust in furtherance of its interests and purposes, and not for the welfare of the defendant." The findings of fact establish that the plaintiff in purchasing the stock in question sought to obtain the control of the company; that his avowed purpose is to change its policy so as to make it unobjectionable to the Standard Oil Trust, and so that it will be against the wishes and purposes of the other members of the

company; also that the Standard Trust is engaged in the same business as the defendant company, and that at the time the National Transit Company sold the stock to the plaintiff, its agents received assurances, not amounting to an enforceable contract, that his action would be such as they desired.

In my opinion the motives and intentions of the persons composing the Producers' Oil Company, Limited, in organizing that company, are not material, except so far as they are expressed in the contract which they made with each other. We deal exclusively with the means which they adopted to carry out their purposes, whatever they were. A large amount of testimony was given relating to the preliminary steps looking towards the organization of the company, but as it failed to show an agreement between the body of subscribers to the capital, we give it no consideration. Its only relevancy, if fully proved, would be to show that the purpose in the minds of the promoters was to deprive the Standard Trust of the Producers' oil and to furnish a competitive market for the same. These purposes are not unlawful, and if the means adopted were adequate, might be accomplished. But whether accomplished or not must depend upon the adequacy or inadequacy of the means.

Nor can I see my way clear to refuse the relief prayed for on the ground that the plaintiff's motives and intentions are at variance with the purposes and wishes of his fellow-members. If what he desires and intends to do as a member of the company controlling a majority in value of interest of its capital is legally and equitably his right, the court cannot refuse to aid him because it may think he ought not so to act. And if it is not legally or equitably his right, the power of the court may be invoked to prevent his abuse of his power, but it does not justify refusing him such rights as he clearly has. The action of the court is not invoked by reason of any supposed equity in the plaintiff, but by reason of an alleged deprivation of his legal rights as a member of an association over which the court is given by express statute the supervision and control. Nor does the fact, which is apparent, that the policy which the plaintiff desires to adopt is also desirable to the Standard Oil Trust, to my mind, furnish a reason for refusing relief, since we are compelled to believe that, although agreeing with that organization in opinion and policy, the plaintiff appears in his own right as a bona fide owner of shares.

The cases cited for the defendant on this point are clearly distinguishable from the case in hand. Baker's Appeal, 108 Pa. 510, and Gould v. Head, 41 Fed. Rep. 240, turned upon the fact that the plaintiff was not the real owner of the stock. Kenton v. Union Pass. Ry. Co., 54 Pa. 452, and Camblos v. R. R. Co., 4 Brewster, 592, were cases in which it was attempted to control the action of a corporation by suits brought in the character of stockholders by persons who had bought stock for the mere purpose of bringing suit in the interest of outsiders. Foll's Appeal, 91 Pa. 434, was a bill to compel specific performance of a contract to deliver stock in a National Bank. The mere right of the plaintiff under his contract furnished no ground for the specific performance sought in equity, but the relief was demanded on the supposed equity arising from the fact that the plaintiff was already the owner of stock which, with the stock contracted for, would give him control of the bank, and enable him to elect himself and his friends directors and officers. Specific performance was refused, on the ground that the circumstances relied upon raised no equity in the plaintiff. It was said that the bank was a quasi public corporation, and that it was against public policy that the control should be in the hands of a single individual. Gage v. Fisher, 31 L. R. A. 557, was similar, but there was only a contract to permit the plaintiff to control the stock without actually buying it. None of the cases cited involved the right of a stockholder to be recognized as such. Nor do any of them involve the denial of the ordinary equitable remedies to one standing wholly upon a legal right.

On the other hand, the case of Rice v. Rockefeller, 134 N. Y. 174, seems to me fully in point upon the present question, and Camden & Atl. Ry. Co. v. Elkins, 37 N. J. Eq. 273, furnishes even a closer analogy. If the plaintiff is the bona fide owner of the interest in the capital of the defendant company which he claims, and is entitled under the laws and rules of the company to represent that interest in the meetings of its members, it cannot be that any legal or enforceable equitable right of the company can be infringed by requiring it to recognize his title. If by his action or attempted action the rights, legal or equitable, of any other member are infringed, that action may be restrained or controlled. But no other member of the company is before

the court as a party in that character. The real contention of the defendants seems to be, not so much that the company will suffer if the relief prayed for be granted to the plaintiff, as that other members in their individual character as producers of oil will be injured; and this is a controversy which we are manifestly unable to determine in this proceeding. I turn therefore to the questions raised upon the undisputed facts by the plaintiff's first, second, third, fourth, fifth, seventh, eighth and tenth, and the defendant's first, second, third and fourth propositions of law. Under the law governing " partnership associations " formed under the act of June 2, 1874, and its amendments, and the agreement, rules and regulations governing the Producers' Oil Company, Limited, is a member of that company who purchases additional shares entitled to represent such additional interest in the capital in the meetings of the company without being elected to membership in respect to such additional interest ?

The 4th section of the act of June 2, 1874, as amended by the act of June 25, 1885, provides as follows :

" Interests in such partnership associations shall be personal estate, and may be transferred, given, bequeathed, distributed, sold or assigned, under such rules and regulations as such partnership associations shall, from time to time, prescribe, by a vote of a majority of the members in number and value of their interests, and in the absence of such rules and regulations the transferee of any interest in any such association shall not be entitled to any participation in the subsequent business of such association, unless elected to membership therein by a vote of a majority of the members in number and value of their interests. And any change of ownership, whether by sale, death, bankruptcy or otherwise, which occurs in the absence of any rules and regulations of such associations regulating such transfer, and which is not followed by election to membership in such associations, shall entitle the owner or transferee only to the value of the interest of the date of acquiring such interest, at a price and upon terms to be mutually agreed upon, and in default of such agreement at a price and upon terms to be fixed by an appraiser to be appointed by the court of common pleas of the proper county, on the petition of either party, which appraisement shall be subject to the approval of said court."

VOL. CLXXXII—36

The provisions of this section affecting the status of transferees of interests are only operative in the absence of rules and regulations prescribed by the association by a vote of a majority of the members in number and value of their interests.  On June 5, 1894, over a year before the plaintiff purchased any of the shares involved in this controversy, the Producers' Oil Company, Limited, in the manner prescribed by the act, and also in conformity with the provision in the rules governing amendments thereto, adopted the amended rule set forth in the findings of fact.  It is conceded that this rule, if valid, is conclusive against the rights claimed by the plaintiff in his bill.  But it is contended that the rule is invalid, because no authority to make such a rule is given by the statute; because it is against the terms of the statute; and because it is in restraint of trade, in derogation of the rights of the members, and unreasonable in its provisions.

The provision forbidding sales of shares except to a particular class of persons, and that requiring a member purchasing additional shares to be elected to membership in respect to such shares, are independent; either may stand though the other fall. The plaintiff, although he had never been lawfully expelled from membership in the P. P. A., was not at the time he purchased this stock qualified for membership therein by reason of his business associations with the Standard Oil Trust.  But the first clause of this rule deals with the right of a member to sell, and not to buy.  No member of the company sold his stock to the plaintiff.  Nor are we able to determine whether or not the persons to whom they did sell were or were not qualified under this clause.  We pass it by therefore to consider the last paragraph of the rule which specifically covers the case in hand.

Many cases are cited for the plaintiff to show that the right of a corporation to make by-laws for the regulation of transfers of stock does not include the right to place restrictions upon transfers.  For the protection of the corporation, its stockholders and creditors, it may prescribe by by-laws the mode of transfer, but it cannot, without express authority in the charter, impose restrictions upon the free alienability of its shares, which is an incident of such property.  The argument, however, fails when it is attempted to apply it to a " partnership association," for it is quite clear that the rules and regulations authorized by the

act of 1885 are intended to govern more than the mere mode of transferring shares, and to embrace the status of a transferee in respect to the association.   The language is : " Interests may be transferred, given, bequeathed, distributed, sold or assigned under such rules and regulations as such partnership association shall from time to time prescribe."   And as the act prescribes, not the manner of registering transfers, but the status of a transferee who has become the owner of an interest in the capital by gift, bequest, distribution, sale, assignment, or other mode of transfer, only in the absence of rules and regulations, it is necessarily implied that these rules and regulations which are to take the place of the statutory provisions may cover the same subject, and this is precisely what the first sentence of this section declares.   If the association may not make rules and regulations covering the status of transferees as well as the manner of transfer, it follows that, in every association having rules and regulations governing the formal transfer of interests, any transferee becomes immediately a member without election, for the statute operates only in the absence of rules and regulations.   Every association, if this be a correct construction of the law, will be required to choose between doing business without any rules at all governing the transfers of shares, and the loss of all control over the membership through the adoption of such rules. It is quite too clear for argument that the power of partnership associations under the statute to make rules and regulations extends to the general subject of the status of transferees, and the manner in which they may become members, as well as to the mode of transfer.   And the question is therefore narrowed to this : Is the provision requiring members of the company purchasing additional shares to be re-elected in respect thereto within this general power, or is it void as against the spirit and intention of the law ?

Whether the " partnership association " ought to be classified by the professor of legal science as a species of the genus corporation, or the genus partnership, or whether it should be set apart as a new genus, seems to me unimportant.   If a corporation, it is so peculiar in its features that the general law of corporations cannot be applied to it without important modifications ; if a partnership, it so differs from the common type that the general law of partnerships is but slightly applicable.   Both

the law of corporations and the law of partnerships are to be resorted to in the absence of statutory regulations, the choice being determined by the nature of the feature under consideration. In the present case we derive little assistance from either. The general rule of corporations invoked by the plaintiff has been laid down to meet the conditions existing in corporations in which the ownership of stock carries with it ipso facto membership in the corporate body. If there are corporations in which the conditions are different, it is manifest that the rule is inapplicable to the extent of the difference. The delectus personarum as it exists in partnerships grows out of the contract of the partners to be associated with each other, and with no others. The reason for it is found in the right of each partner to act as agent for all the others, the liability of each for the partnership obligations and the right of each to contribution from the others. None of these conditions exist in partnership associations. The case of a transfer of interest from one partner to another is not analogous to the case in hand, for the dissolution is caused in such a case, not by the addition to the interest of one of the partners, which adds nothing to his power, but by the dropping out of the assigning partner, whose continuance is necessary to the partnership existence. A "partnership association" differs from the common type of partnership in that the members vote, and do not act with the powers of partners, and in that they are subject to no joint liability. It differs from the common type of corporations in that the members have a right to admit or refuse membership in the company to the transferee of the interest as well as in some other particulars. In determining whether the act of 1885 should be strictly construed against the power of the association to limit the right of one of its members to acquire control by increasing his interest, we ought to look to the spirit and intention of the act. The peculiar form of delectus personarum, so carefully guarded in partnership associations, cannot be based upon the same consideration which gives rise to the common form in partnerships, for there is no mutual agency, no joint liability. Looking at the general scheme of the act, it seems apparent that it was intended to enable persons desiring to combine their capital in any business enterprise to do so without incurring, on the one hand the general liability of partners, or on the other, the risk of having

the business taken out of the control of those in whom it was originally placed, without their consent, which exists in ordinary corporations. If this be true, it is manifest that transfers of interests from one member to another are within the mischief sought to be prevented, for the members vote, by value of interest as well as number, upon most important questions.

If the case of a member transferee is not included within the provisions of the statute, it is not because the letter of the law does not include it, but because the court is moved by the context to limit its literal meaning. "Interests," the act declares, without indicating any exception, "may be transferred . . . . under such rules and regulations as such partnership association shall from time to time prescribe," etc. "Any change of ownership, . . . which occurs in the absence of any rules and regulations of such associations regulating such transfer, . . . shall entitle the owner or transferee," etc.

But the term "election to membership" is not happily chosen to express the consent of the members to the acquisition of a greater interest by one of their number. One who is already a member cannot be in any proper sense of the term elected to membership. The broad and general terms used in the act, together with the use of this phrase inappropriate to the case of transfer between members, indicate that the particular case of such transfer was not present in the legislative mind. Had it been, the general terms would have been modified if it were intended to exclude it, and some modification of the term "elected to membership" would have been made, had the intention been specifically to include a transfer to one already a member. We can only ascertain the legislative will in a particular case by determining whether or not it falls within the general intention expressed in the law. And while my mind inclines to the belief that such a case was not within the intention of the legislature, it is not without much doubt and some hesitation that I so decide. But it seems clear to me that the power of the association to regulate the status of transferees of interests in capital is not limited by the regulations prescribed by the act. In conferring upon the association authority to legislate for itself, it is implied that it may make rules which differ from those prescribed in the act. If the case of a transfer to one already in the membership be not included in the

terms of the act, it is at most an omitted ·case which the association itself may provide for. The rule adopted by the defendant is not against the terms of the act, for at best the act does not cover it at all. Nor is it unreasonable, for it is in line and harmony with the general spirit and intention of the act. Nor. does it infringe any right of the members, for. the owners of the shares may still freely sell them to whom they please, the only difference being that a sale to a member is put in the same category as a sale to other persons. No member can claim a vested right to a greater voting power than was given him by the articles of association. The full value of the interest is guaranteed to the purchaser in any event.

Thus far we have considered the rules and regulations of the defendant as mere by-laws, imposed by a majority under the authority of the statute. The original rules were, however, agreed to and signed by all the members at the time the company was organized, and as part of its organization. They have, therefore, the effect of articles of association additional to the certificate filed as required by law. The plaintiff had notice of them both actual and constructive. He is therefore bound by this agreement, and one of its provisions is that it may be altered by a vote of the majority of the members in number and value of their interests. It was so altered, long prior to his purchase of the shares in question, no vote being against it except his own. Conceding that the authority thus given to alter cannot be carried so far as to permit a change in the general scope of the instrument; that no change can be made against the mandate of positive law, or contrary to the certificate of association, or which is unreasonable or oppressive, still I think this alteration is not an undue exercise of the power, for the same reasons which have been already adverted to, and which, considered in this aspect, are still more forcible and cogent.

Being of opinion that the last clause of Rule 25, which excludes the plaintiff from participation in the business and profits of the defendant in respect to the shares purchased by him, until he shall be elected to membership in respect to such shares by the majority of the members in number and value of their interests, is valid, it follows that he is not entitled to the relief prayed for in his bill. His counsel in the argument distinctly

disclaimed any desire to have the stock transferred upon the books of the company unless such transfer carried with it the right to vote and participate in the profits ; and hence, we do not consider the question whether so much of the relief prayed for might not properly be granted on the facts disclosed.

It remains to consider the case for affirmative relief presented by the defendants upon their cross bill.

At the time the plaintiff presented the certificates for 13,013 shares to the secretary of the company and had new certificates issued to himself for the same, he was not in fact the owner of the interest represented by the certificates.   He in effect represented himself to be owner by presenting them indorsed as they were in the usual form, and demanding the transfer to himself. But he is now the owner of the same shares by a subsequent purchase.   And the National Transit Company, which was at the time owner, is clearly estopped by its own acts from asserting that ownership as against the defendant.

We are required to note a difference here between " partnership associations " and ordinary corporations.   In the latter the transfer of stock on the books invests the transferee with the full rights of a stockholder, including the right to vote the stock and to receive the dividends.   In the former this right does not follow the transfer on the books, which is a merely ministerial act of an officer or clerk, but is obtained only by election to membership by the members of the company.   We have held in the principal case that the plaintiff cannot participate in the business or profits of the defendant company as to purchased stock without re-election, and it follows that no clerk or officer can confer that right upon him by permitting a transfer upon the books.   Apart from membership, and pending the appraisement of the value of the interest, or the sale of it to another who may be acceptable to the remaining members, it may be important, and it seems to me it is quite proper that the interest should stand on the books of the company in the name of the true owner, both for its protection and his own.   If we now grant the relief prayed for in the cross-bill we shall restore the interest owned by the plaintiff on the books of the company to the names of the original members, and invest them with an apparent right to dividends and participation in the business to which

they are not entitled, and which might be an injury to all· concerned. The books of the company defendant do not show that the plaintiff is entitled to vote, or participate in profits in respect to these shares; and it can therefore suffer no injury from an unauthorized transfer.

Let a decree be drawn dismissing both the plaintiff's bill and the cross-bill filed by the defendant, at the costs of the plaintiff. And at the time of settling the decree the court will hear either party upon any exceptions to the findings of fact, or of law, which they may file respectively, within ten days after notice of the filing of this opinion.

The court subsequently entered a decree dismissing the bill.

*Error assigned* was decree dismissing bill.

*D. T. Watson*, of *Watson & Mc Cleave*, and *Samuel S. Mehard*, for appellee.—The plaintiff cannot extend his membership in the defendant company from the one three-hundredth part to over a majority of its capital without a novation of the contract under which the company was formed, and this can be effected only by the mutual consent of the parties : Morawetz on Priv. Corp. (1st ed.), secs. 2, 3, 12, 27, 31, 126–135 ; Stone v. Miller, 16 Pa. 450 ; Hartley v. Kirlin, 45 Pa. 49 ; Kemmerer's App., 102 Pa. 558; Walstrom v. Hopkins, 103 Pa. 118; 1 Parsons on Contracts, *220; Morawetz on Corp. sec. 321; Keystone Boot & Shoe Co. v. Schoellkopfs & Sons, 11 W. N. C. 132; Hill v. Stetler, 21 W. N. C. 255 ; Maloney v. Bruce, 94 Pa. 249; Eliot v. Himrod, 108 Pa. 569 ; Hite Nat. Gas Co.'s App., 118 Pa. 436; Van Horn v. Corcoran, 127 Pa. 255; Sheble v. Strong, 128 Pa. 315.

If the language of the statute is plain and free from ambiguity, and expresses a single, definite and sensible meaning, that meaning is conclusively presumed to be the meaning which the legislature intended to convey: Black on Interp. of Law, 35 ; Bradbury v. Wagenhorst, 54 Pa. 180 ; County of Allegheny v. Gibson, 90 Pa. 397 ; Pittsburgh v. Kalchthaler, 114 Pa. 547 ; Endlich on Interpretation of Statutes, sec. 41 ; Packer v. Sunbury & Erie R. R., 19 Pa. 211; Howard Assn.'s App., 70 Pa. 344.

If the meaning of the statute is doubtful as to the rule governing transfers to members, the construction must follow the common law, which requires the express consent of all the partners to an enlargement of a partner's membership : Arthur v. Bokenham, 11 Mod. 148 ; Doner v. Stauffer, 1 P. & W. 198 ; Baker's App., 21 Pa. 76 ; Cooper's App., 26 Pa. 262 ; Van Dike's App., 57 Pa. 9 ; Parsons on Partnership, secs. 106, 108 ; Cochran v. Perry, 8 W. & S. 262 ; Lennig v. Penn Morocco Co., 16 W. N. C. 114 ; Crowther v. Upland Industrial Co-operative Assn., Limited, 1 Del. Co. Rep. 264 ; Ames v. Downing, 1 Bradf. 321 ; Jacquin v. Buisson, 11 How. Pr. 385 ; Collyer on Part. sec. 540 ; Small's Est., 151 Pa. 5 ; Eliot v. Himrod, 108 Pa. 569 ; Ames v. Downing, 1 Bradford, 321 ; Jaffe v. Krum, 88 Mo. 669 ; Allen v. Long, 80 Tex. 261 ; Imperial Refining Co. v. Wyman, 38 Fed. Rep. 574 ; Carnegie, Phipps & Co. v. Hulbert, 10 U. S. App., 454 ; Chapman v. Barney, 129 U. S. 682 ; Robbins v. Butler, 24 Ill. 387 ; Dennis v. Kennedy, 19 Barb. 517 ; Taft v. Ward, 106 Mass. 518.

Parties have not given consent to an extension of plaintiff's membership by a general rule or regulation.

There is a rule of the defendant company which explicitly denies consent in advance to an extension of membership, and the rule is valid : Laflin & Rand Co. v. Steytler, 146 Pa. 434 ; Angell & Ames on Corporations (11th ed.), sec. 342.

The plaintiff has no standing in a court of equity, for the reason that he seeks the relief prayed for in order to wrongfully divert the defendant company from the purposes for which it was formed : Jennings, Beale & Co. Ltd. v. Beale, 146 Pa. 125 ; In re Imperial Steel Co., 2 Dist. Rep. 806.

The purpose of the plaintiff to gain control of the defendant company, and so to manage its affairs as to supply the Producers' oil to the Standard Oil Company, is wrongful, and aid will not be given by a court of equity to enable him to carry it out : Foll's App., 91 Pa. 434 ; Forrest v. Manchester, Sheffield & Lincolnshire Ry. Co., 4 De G., F. & J. 125 ; Rice v. Rockefeller, 134 N. Y. 174.

*J. H. Reed* and *A. Leo Weil*, of *Weil & Thorp*, with them *P. C. Knox*, *Hinckley & Rice* and *Roberts & Carter*, for appellant.—The association has not the power, by a majority vote,

to adopt a by-law, imposing upon the transfer of interests additional restrictions to those imposed by the fundamental law, so that a member, already elected and qualified, who still retains his membership, each time that he acquires additional shares must, as to each of such shares, be again elected as a member.

If such associations are not quasi corporations, but unincorporated associations, with all the powers and liabilities of general partnerships, except as modified by statute or the articles of association, they then have no power to adopt by-laws unless given by statute or by the articles of association. The latter are silent on the subject, and no statute gave such authority until the act of June 9, 1895 : 3 Am. & Eng. Ency. of Law (2d ed.), 1060; Livingston v. Lynch, 4 Johns. Ch. Cas. 573; Thomas v. Ellmaker, 1 Par. Eq. Cas. 98; Niblock Ben. Soc. & Ac. Ins., sec. 16.

These associations are quasi corporations : Oakridge Coal Co. Ltd. v. Rogers, 108 Pa. 147; Stevens v. Phila. Ball Club, 142 Pa. 52; Patterson v. Tidewater Pipe Co., 12 W. N. C. 452; Whitney v. Backus, 149 Pa. 29 ; Briar Hill Coal & Iron Co. v. Atlas Works, 146 Pa. 290; Laflin & Rand Co. v. Steytler, 146 Pa. 434; Billington v. Gautier Steel Co., 19 W. N. C. 339; Com. v. Sandy Lick Coal Co., 16 Phila. 599; Liverpool Ins. Co. v. Mass., 10 Wallace, 566; Waterbury v. Merchants' Union Express Co., 50 Barb. 157.

If we apply the rules relating to corporations, the by-law must fall. No such by-laws can be adopted by any corporation without express authority of the clearest and most unequivocal kind, and such authority must be contained in the charter or the statute: In re Klaus, 67 Wis. 501; Cook on Stock & Stockholders, sec. 408; Trust Co. v. Lumber Co., 118 Mo. 447.

Rules and regulations of corporations which affect the rights of third persons who are not members, though not, properly speaking, by-laws, are somewhat similar in their nature, and require mention under the same head : 1 Morawetz on Corp. sec. 501; Boisot on By-laws, sec. 5; 1 Thompson on Corp. sec. 937; 1 Am. & Eng. Ency. of Law, 705; Chouteau Spring Co. v. Harris, 20 Mo. 382; Feckheimer v. National Bank, 79 Va. 80; 5 Am. & Eng. Corp. Cases, 156; Johnston v. Laflin, 103 U. S. 800; Moore v. Bank, 52 Mo. 377; Com. v. Gill, 3 Wharton, 227; Bloede v. Bloede, 4 Am. & Eng. Corp. Cases

(N. S.), 619; Driscoll v. W. B. & C. Mfg. Co., 36 N. Y. Super. Ct. 488; Bank of Atchison County v. Durfee, 118 Mo. 431.

Only one restriction is anywhere provided for by the act, that is, election to membership of transferees not already members, in the absence of rules and regulations doing away with such election, and therefore no other restrictions can be added. By implication all other restrictions are excluded: Coast Line R. Co. v. Savannah, 30 Fed. Repr. 649; Diligent Fire Co. v. Com., 75 Pa. 291; Raynor v. Beatty, 9 W. N. C. 201.

The alleged by-law or rule and regulation is void, because not within the scope of subjects to be controlled by by-laws or rules and regulations: Taylor on Private Corp., sec. 7; Waterman on Law of Corp. sec. 72; Angell & Ames' Corp. sec. 325; Cook on Stock and Stockholders, sec. 700a; 1 Thompson on Corp. sec. 935; 2 Kyd on Corp. 122.

OPINION BY MR. JUSTICE McCOLLUM, October 11, 1897:

We think the court below entered the proper decree in this case. The plaintiff filed his bill to compel the defendant company to concede to him the rights of a member as to shares of which he was merely a transferee. The shares so held by him, together with the shares he subscribed for, represented a clear majority of the capital of the company. On payment of his subscription in accordance with its terms he was duly elected to membership in the company, and he then received from it a certificate for 300 shares of its capital of the par value of $10.00 each, that being the number of shares for which he had subscribed. Afterwards, and prior to the institution of this suit, he purchased from the National Transit Company 29,764 shares, and from other persons 131 shares, making in all 29,875 shares in addition to his original 300 shares. The shares thus purchased by him were shares which members of the defendant company had sold, and which the parties from whom he had purchased had bought. The National Transit Company was then one of the companies affiliated with the Standard Oil Company, and controlled by what is known as the Standard Oil Trust, in which the plaintiff was a shareholder at the time of his purchase. His avowed purpose in making the purchases mentioned was to obtain control of the defendant company and change its policy from what he characterized as " gad fly " com-

petition with the Standard, to such competition as he believed would be unobjectionable to it. There is reason to believe that he could not have obtained the stock but for the assurance that he would use the power he supposed it would give him to accomplish his declared purpose. While it is probable the accomplishment of his purpose would be advantageous to him, it is very clear that the other members of the defendant company regarded his scheme as fatal, if carried out, to the principal object intended to be achieved by the organization of the company, and as destructive of their interest in it. The principal and controlling question raised by the bill and answer is whether the plaintiff is entitled, by reason of his election to membership in the defendant company on payment of his subscription, to have transferred to him on the books of the company and to vote the shares purchased as above stated. The plaintiff contends that he is, and the defendant company contends that he is not. The arguments in support of and against their respective contentions are exhaustive and able, but an extended review of them is not deemed essential to a proper determination of the question we have to consider.

It is conceded that the plaintiff has no right to vote the shares he purchased as above stated if the rule of June 5, 1894 is valid. It appears from the tenth finding of fact that the rule was adopted by the vote of a majority in number and value of interests of the members of the defendant company. To determine whether it was within the power of the company to establish the rule we must look to the statutes under which it was organized. As bearing on this question it is sufficient to refer to the Act of June 25, 1885, P. L. 182, which is amendatory of the fourth section of the Act of June 2, 1874, P. L. 271. It is as. follows : " Interest in such partnership association shall be personal estate, and may be transferred, given, bequeathed, distributed, sold or assigned, under such rules and regulations as such partnership associations shall from time to time prescribe by a vote of the majority of the members in number and value of their interests ; and in the absence of such rules and regulations the transferee of any interest in any such association shall not be entitled to any participation in the subsequent business of such association, unless elected to membership therein by a vote of a majority of the members in number and value of their in-

terests.    And any change of ownership, whether by sale, death, bankruptcy or otherwise, which occurs in the absence of any rules and regulations of such association regulating such transfer, and which is not followed by election to membership in such association, shall entitle the owner or transferee only to the value of the interest so acquired at the date of acquiring such interest, at a price and upon terms to be mutually agreed upon, and in default of such agreement, at a price and upon terms to be fixed by an appraiser to be appointed by the court of common pleas of the proper county, on the petition of either party, which appraisal shall be subject to the approval of said court."

It will be observed that the statute makes no distinction between a transferee who is a member of the partnership association and a transferee who is not a member of it.    The language of the statute fairly excludes such a distinction, and there is nothing in the articles of association which warrants it.    It is a distinction which, if made, would enable a member of the association to obtain a controlling interest in it by a purchase of a sufficient number of its shares, to defeat the controlling purpose of its organization, and to impair, if not absolutely destroy, the interests of the other members.    If the legislature had intended to make this distinction it could and presumably would have done so in a few words.    The absence of anything in the statute indicative of a purpose to make it tends to confirm the view that members who purchase shares sustain the same relation to them as purchasers who are not members.    Of what avail is it to deny to a stranger who buys shares of the capital of the association the right to vote them without its consent manifested by his election to membership therein, while a member of the association who desires to obtain control of it to defeat the purpose for which it was organized and to change its policy in the interest of a rival company is allowed to vote without its consent the shares he has purchased?    It seems to us that a construction of the statute which admits of such results is opposed to the spirit, as well as the letter of it, and that so much of the rule of June 5, 1894 as puts the member who purchases shares on the same footing with respect to them as the stranger who purchases shares has, is in clear accord with and authorized by it.    We cannot assent to the plaintiff's claim that the defend-

ant company is a corporation and restricted, in the adoption of
by-laws, rules and regulations for its government, to such as it
is within the power of the latter to prescribe. It may be con-
ceded that the defendant company has some of the qualities of
a corporation, but it is nevertheless a partnership association,
governed by the statutes and articles under which it was organ-
ized, and the rules and regulations it may prescribe in execution
of the powers with which the statutes have invested it. We con-
cur in, and need not add anything to, what the learned judge of
the court below has so well said on this point, and in respect to
the agreement or understanding between the parties when the
company was organized. In accordance with the views ex-
pressed in this opinion we overrule the specifications of error.

Decree affirmed and appeal dismissed at the cost of the appel-
lant.