284 SUPREME COURT OF LOUISIANA.

R. R. Cos., Receiver, vs. Sheriff et al.

No. 13,592.

VICKSBURG, SHREVEPORT AND PACIFIC RAILROAD CO., J. H. MCCORMICK, RECEIVER, VS. W. N. TRAYLOR, SHERIFF ET AL.

SYLLABUS.

Where a defendant in injunction sets up a reconventional demand which is disallowed by judgment of the District Court, he may, on an appeal of the plaintiff in injunction from a judgment against himself on the main demand, have the judgment upon the reconventional demand altered without appealing therefrom by prayer for amendment, if it be connected with and incidental to the main demand, but not if it be properly the subject-matter of a separate and independent action.

The two per cent. per month interest which is affixed by law as a penalty for delinquency in the payment of ordinary governmental State taxes is not affixed by law as a penalty for delinquency in the payment of the taxes levied in aid of a railroad enterprise under Article 242 of the Constitution of 1879—the latter bear legal interest, however, from the dates they became due until payment.

APPEAL from the Seventh Judicial District, Parish of Richland— Ellis, J.

*Stubbs & Russell* for Plaintiff, Appellant.

*Lazarus & Luce* for New Orleans & Northwestern Railway, Defendant, Appellee.

The opinion of the court was delivered by

NICHOLLS, C. J. In July, 1891, the Vicksburg, Shreveport and Pacific Railroad Company applied for and obtained from the District Court, for the Parish of Richland, an injunction restraining Lem Scott, sheriff of the Parish of Richland, ex-officio tax collector, who had made a demand upon it for the payment of five hundred and thirty-eight dollars and fourteen cents, a special tax, levied for the benefit of the New Orleans and Northwestern Railroad Company, from proceeding further in the collection of said tax, and in the same proceeding the plaintiff therein prayed for judgment contradictorily with the said

sheriff and tax collector, and the police jury of the Parish of Richland, decreeing the tax levied by the said police jury requiring the payment of five mills for the New Orleans and Northwestern Railroad Company for ten years, unconstitutional, illegal, null and void, as well as all the proceedings of the police jury leading up to the levying of said tax.

The New Orleans and Northwestern Railroad Company intervened in the suit to sustain the legality of the tax. The District Court rendered judgment against the plaintiff, in favor of the defendants, dissolving the injunction which had been sued out in the action, at costs of plaintiff, with the right reserved to the defendants and intervenors to sue for such damages as might have been caused thereby, and ordering the officers to proceed in the collection of the tax.

On appeal to the Supreme Court this judgment was affirmed. The pleadings, facts and judgments, will be found recited in the 52 Annual, on page 512, *et seq.*

The tax which the sheriff was at that time seeking to collect, was the tax of 1891.

On the 24th of March, 1900, the plaintiff company filed in the District Court for Richland Parish, a petition in which it was alleged that, under a proclamation of the president of the police jury of Richland, made in January, 1890, and a subsequent resolution of said police jury, a forced contribution or tax of five mills was levied against its property, to an amount of six thousand eight hundred and thirteen dollars and seventy-four cents for the years 1890 to 1899, inclusive, for the benefit of the New Orleans and Northwestern Railroad Company. That it had been notified on the 2nd of March, 1900, by W. N. Traylor, then sheriff and ex-officio tax collector of Richland parish; "that the subsidy tax due the New Orleans and Northwestern Railroad Company, by the Vicksburg, Shreveport and Pacific Railroad Company, according to a judgment lately rendered by the Supreme Court, was then due and unpaid, and if not paid within twenty days from that date, he would proceed to collect the same as the law directed."

Plaintiff annexed to this petition the following statement, signed by the sheriff and tax collector, which accompanied the notice sent to it, setting out the amount claimed to be due to the New Orleans and Northwestern Railroad Company for taxes, interest, and penalties, in default of payment of which its property would be sold

R. R. Cos., Receiver, vs. Sheriff et al.

STATEMENT.

Showing taxes, interest and penalties due the New Orleans and Northwestern Railroad Company:

| Years. | Total assessment. | Rate. | R.R. tax. | No. of months. | Rate per month. | Amount of penalty. | Total taxes and penalties due N. O&N.W.Ry |
|---|---|---|---|---|---|---|---|
| 1890 | $ 98,409 00 | 5M | $492 04 | 110 | 2% | $1082 40 | $1574 44 |
| 1891 | 98,368 00 | 5M | 491 84 | 98 | 2% | 964 82 | 1456 66 |
| 1892 | 98,288 00 | 5M | 491 44 | 86 | 2% | 845 27 | 1336 77 |
| 1893 | 98,288 00 | 5M | 491 44 | 74 | 2% | 727 33 | 1218 77 |
| ·1894 | 98,128 00 | 5M | 490 64 | 62 | 2% | 608 39 | 1099 03 |
| 1895 | 165,067 00 | 5M | 825 33 | 50 | 2% | 825 34 | 1650 67 |
| 1896 | 178,288 00 | 5M | 891 44 | 38 | 2% | 667 16 | 1558 60 |
| 1897 | 164,600 00 | 5M | 823 00 | 26 | 2% | 427 96 | 1250 96 |
| 1898 | 178,082 00 | 5M | 890 41 | 14 | 2% | 249 31 | 1139 72 |
| 1899 | 185,232 00 | 5M | 926 16 | 2 | 2% | 37 04 | 963 20 |

Amount of Tax and Interest ................................$13,248 76
Notice ........................................................ 25

Total................................................$13,249 01

W. N. TRAYLOR,
*Sheriff and ex-Officio Collector.*

Plaintiff alleged that the sheriff and tax collector had included in said statement over and above the amount of the taxes levied, and by way of penalties, the sums of six thousand four hundred and thirty dollars and two cents, which he declared he had included therein under instructions from the New Orleans and Northwestern Railroad Company.

. Plaintiff alleged that, on the 20th of February, 1900, it had made a formal tender of the sum of six thousand and eight hundred and thirteen dollars (amount of the taxes with sheriff's costs) to the New Orleans and Northwestern Railroad Company, the beneficiary of the contribution, and it had again made a tender of said amount on the 23rd of March, 1900, to the sheriff and tax collector. That the tenders were refused.

Plaintiff averred that the excess of said demand above the amount tendered as set forth, to-wit, to the extent of six thousand and four hundred and thirty dollars and two cents, was illegal, extortionate and not due or demandable; and that the threatened attempt of the said Traylor, sheriff, to compel the payment of same out of the property of petitioner was illegal, oppressive and unjust, and will work irreparable injury to petitioner.

That the proclamation of the president of the police jury and all of the proceedings anteceding said ordinance of the police jury, beginning

with the petition of property owners, fixed the amount of the contri-
bution annually for ten years at five mills on the taxable values, and
no more. That it was a special act proceeding, and that the proclama-
tion or ordinance aforesaid did not and could not, under its general
powers, under the law, increase or extend the contribution beyond five
mills per annum. That the Article 242 of the Constitution of 1879,
expressly provides that such contributions shall not exceed five mills,
nor extend beyond ten years; that the Act No. 53 of 1886 does not
impose or authorize the imposition of the penalty demanded; that the
ordinance of the police jury does not impose it. That the tax was a
forced, and special assessment under special laws and proceedings not
authorizing the imposition of interest or penalties, and must be
strictly construed. That the imposition of the tax was a forced con-
tribution, in derogation of common right; and that the laws author-
izing the same, like all such statutes of like nature, must be strictly
construed.

That, as a debt, it could bear no interest until finally liquidated by
judgment, the legality of the tax being contested in good faith, under
advice of counsel and it not having been declared legal until February
of the present year. That no law, statute, or otherwise, imposes any
penalty for the non-payment of a special or local tax for the benefit of
railroads; nor does the ordinance levying the tax impose or direct that
any be enforced; and, therefore, the sheriff was without right to de-
mand anything more than the five mill tax on petitioner's property, the
amount heretofore tendered.

In view of the premises, plaintiff prayed for an injunction restrain-
ing the sheriff of Richland from attempting to collect the penalties
claimed, as above set forth, to-wit: six thousand four hundred and
thirty and 2-100 ($6,430.02), or any other sum than the amount ten-
dered him as aforesaid, in full of petitioner's liability for account of
the five mill tax, or forced contribution on its property in Richland
Parish, for ten years commencing with the year 1890.

It further prayed for citation on the sheriff and tax collector and
the New Orleans and Northwestern Railroad Company, and that, upon
final trial, the injunction be perpetuated.

The plaintiff company having been placed in the hands of a receiver,
he was made a party plaintiff.

An injunction issued as prayed for.

The sheriff and tax collector, after pleading the general issue

alleged that the taxes proceeded for were legally due and exigible; that under the law he was entitled to collect and enforce the penalties upon the principal of said taxes.

He joined in and adopted the answer of the New Orleans and Northwestern Railroad Company, and prayed to be allowed to proceed with the collection and enforcement of the taxes and penalties.

The New Orleans and Northwestern Railroad Company, after pleading a general denial, alleged that the said taxes in favor of the New Orleans and Northwestern Railway Company were legally exigible; that defendant was entitled to 2 *per cent.* per month as penalty upon said taxes from the time they became delinquent, which was from December 31st of each year in which said taxes became due and payable; and that the sheriff was entitled to collect the amount of the penalty, as well as the interest upon said taxes, from petitioner and its property.

That plaintiff company enjoined the enforcement and collection of said taxes in case styled V. S. & P. Ry. Co. vs. Lem Scott, Sheriff *et al.,* alleging that they were illegal and unconstitutional, and illegally levied, which injunction was dissolved by the District Court of Richland and the Supreme Court of Louisiana, and the said judgment had become final; that said plaintiff could not again enjoin the collection of said taxes on other and different grounds, and that said judgment was *res judicata* against plaintiff's demand.

That in the event the court should hold that defendant was not entitled to the enforcement and collection of the aforesaid penalty of 2 per cent. per month on said taxes from December 31st of the year in which each tax was due and payable, defendant was entitled to interest upon said taxes from the time they became due and payable, and, furthermore, entitled to interest as damages by reason of the issuance of the injunction in the case of the Vicksburg, Shreveport and Pacific Railway Company vs. Lem Scott, Sheriff, *et als.,* which injunction was finally dissolved, and under and by means of which injunction the payment and enforcement of said taxes was stayed and restrained and the use of said amounts of money withheld from defendant; that the use of said money should be placed and fixed at 8 per cent. per annum, and that if not fixed at 8 per cent. per annum, defendant was at least entitled to legal interest on the amount of said taxes from the time they became due and payable.

That by reason of the issuance of said injunction, it suffered damage

in the way of securing a dissolution of the same; that in order to secure the dissolution of said injunction in its own behalf, and in behalf of the sheriff, tax collector and police jury (said officials being only nominal parties to the proceeding, and this defendant being the real party and owner of the taxes enjoined), defendant had to employ and pay counsel and pay all the necessary expenses to secure such dissolution; that while the pleadings were filed in the name of the police jury and signed by the district attorney, they were prepared and drafted and all services rendered in said proceedings, both in the lower and Supreme Courts, in the conduct and trial of said litigation by the counsel employed by this defendant; and that this defendant had, theretofore, been damaged by the issuance of said former writ of injunction, in the following amounts, to-wit:

For attorney's fees for services rendered in procuring dissolution of said injunction in the District and Supreme Courts in the sum of 10 per cent. upon the total amount of said taxes, with interest and penalties, and which amounted to the sum of $13,239.60, or say $1323.96.

And the services of which said counsel were well worth that amount.

For traveling and hotel expenses of counsel for defendant in attendance on court, and which defendant paid the sum of $100.00.

For attendance of employees of defendant and others, as witnesses in said case, which were paid by defendant—$100.00.

Total $1523.96.

That on the dissolution of the injunction in the instant case, being the second injunction issued by plaintiff, defendant was entitled to damages sustained by the issuance of said writ in the amount following, to-wit:

Attorney's fees of counsel employed to secure the dissolution of said injunction, 10 per cent. upon $13,239.60, being the total amount of said taxes with interest and penalties, or say $1323.96.

And that said services for the procurement of said dissolution were well worth that amount.

For expenses of counsel in attendance upon court in the trial of the case, 100.00

For expenses of copies, printing briefs, etc., $150.00.

Total, $1573.96.

In view of the premises, defendant prayed that the injunction herein sued out be dissolved and the demand of plaintiff rejected; that the sheriff be ordered to proceed with the collection of said taxes and pen-

alties and for the recovery of the sum of $3097.92 damages as hereinbefore set out, and in the event the court should hold that defendant was not entitled to penalties upon said taxes, then it prayed for judgment for interest upon the principal of said taxes from the time they became due and payable, at 8 per cent. per annum, and if not at 8 per cent. per annum, then with legal interest upon the principal of said taxes from the time they became due and payable each year; and for all costs and full and general relief.

The District Court dissolved and set aside the injunction at plaintiff's costs and rejected all other demands of both plaintiffs and defendants.

Plaintiffs appealed. The defendants did not.

In the Supreme Court, defendants moved as follows: to amend the judgments appealed from.

1. In the event the court should not hold that plaintiff should pay the statutory penalty of 2 per cent. per month upon the taxes in contest, from the time due, and in that event only, they pray that they be allowed interest on the said taxes at the rate of 8 per cent, or at least legal interest as prayed for in the answer in the lower court.

2. That the demands of the New Orleans and Northwestern Railway and W. N. Traylor, sheriff, for damages for attorney's fees, for printing briefs, for expenses of counsel in attendance upon court, and for all damages as set forth in the answer of the New Orleans and Northwestern Railway Company, be allowed by this court, and that plaintiff be declared liable therefor for the injunction issued in the case of the V. S. & P. Ry. Co. vs. Lem Scott, Sheriff, and in this case, and that the amount of attorney's fees for the dissolution of both injunctions be determined and fixed by this court, and that the judgment be amended so as to allow all the demands claimed by the defendant, said New Orleans and Northwestern Railway Company, in its said answer, and they finally pray for costs and general relief.

## OPINION.

In the brief filed on behalf of the New Orleans and Northwestern Railway Company, appellees herein, it is said that the only questions submitted are:

1. Whether the New Orleans and Northwestern Railway Company is entitled to the statutory penalty upon the taxes due it by the plaintiff,

or, in the alternative, to interest and damages due for the dissolution of the injunction in the case of the ,Vicksburg, Shreveport and Pacific Railway Company vs. Lem Scott.

2. Whether the plaintiff is liable for attorney's fees, printing briefs, expenses of counsel and witnesses in attendance on court, and the amount of attorney's fees so to be paid.

3. To determine the liability of plaintiff in the present suit for attorney's fees, printing briefs, and other expenses, in the event of the dissolution of the injunction.

Appellees contend that whenever the term "taxes" is used generally, it applies to all burdens imposed under the taxing power, whether or not they be technically taxes distinguished from special assessments.

That Section 39 of Act 85 of 1888 (State Revenue Act of that year), provided that "all taxes unpaid on the 31st of December, of each year, shall bear interest at the rate of 2 per cent per month from said date." That this covers all taxes; local assessments included.

That Section 6 of Act 35 of 1886 provided that the police jury and authorities "shall have the same power to enforce and collect any special taxes that may be authorized by such election (special elections under Article 242 of the Constitution) as is or may be conferred by law upon them, for the collection of other taxes."

That, under these statutes, the interest and penalties claimed by the New Orleans and Northwestern Railway Company are due and demandable.

The contention of the plaintiff in injunction is:

1. That Article 242, Constitution of 1879, limited forced contributions to railroads to five mills for ten years, and all legislation thereunder is necessarily subject to the same limitation.

2. The general revenue laws provide the means for enforcing the collection of taxes for the support of the State and its several political subdivisions only.

3. Act 35 of 1886 permitted the local political subdivisions to adopt the same means to enforce and collect a special tax as the State used for the enforcement and collection of the general tax.

4. This authority is permissive only, and without affirmative action, on the part of the local power, it is inoperative.

5. In the absence of any provision for imposing penalties in the ordinance of the police jury which levied the tax or contribution, no penalty can be exacted by the beneficiary.

6.  Penal laws are to be strictly construed, and in the construction of revenue laws the same general principle applies more especially with reference to their penal force. (Cooley on Tax, p. 200).

7.  "In the construction of any grant of the power to tax made by the State to one of its subdivisions, the rule accepted by all the authorities is that it should be with strictness."

8.  The penalty, 24 per cent. per annum, sought to be exacted, is not claimed by the parish, but by the New Orleans and Northwestern Railroad Company, becomes a part of the bonus, limited in the Article 242, and the legislation to five mills for ten years, and is extra constitutional.

9.  Taxes and forced contributions are not synonyms; the former is constitutional and the latter is derived from some "vagrant power." Provision is made in the revenue laws for penalties for the non-payment of taxes, but none for "forced contributions." (38 Ann. 323; 39 Ann. 460; 41 Ann. 265; 43 Ann. 23, 32, 337).

10.  The power to enforce payment of a debt by the sale of property does not carry with it an increase of the debt as penalty or otherwise.

In support of the correctness of their positions we are referred to our decisions in Barber Asphalt Paving Co. vs. Watt, 51 Ann. 1349, and Shreveport vs. Prescott, 51 Ann. 1922.

Counsel furnish us, in addition, with the following propositions as being law, and sustained by the authorities whom they cite:

"The payment of local assessments may not be enforced by the imposition of fines and penalties by the municipality." (25 Am. and Eng. Ency. of Law, 565; Gridley vs. Bloomington, 88 Ills. 554; 30 Am. Rep. 566).

"Statutes providing penalties for non-payment of taxes do not apply to local assessments, unless such statutes are expressly made applicable thereto." (Hosmer vs. Hunt, 134 Ills. 317; Bothwell vs. Milliken, 104 Ind. 162; Maple vs. Beltzhoover, Penn., 18th Atlantic Reps. 650; Smith vs. Kingston, 120 Penn. St. 357; 25 Am. and Eng. Ency. of Law, 565.)

"A municipal corporation cannot impose a penalty for neglect to pay taxes promptly, unless expressly authorized by law to do so." (Cooley on Taxation, 315, quoting Augusta vs. Dunbar, 50 Ga. 387.

"An attempt to collect anything in excess of five mills for ten years is beyond the power of the authorities and in excess of the constitu-

tional limitation fixed as that of the tax." (Sneed vs. Campbell, 24 Fed. Rep. 886).

"An assessment for the benefit of a local public improvement is in its nature a tax, and as such carries no interest by way of penalty for non-payment, unless the law so expressly provided." (Sargent & Co. vs. Tuttle, 67 Conn. 162; 32nd Vol. Lawyers' Annotated Reports, 822).

"A county tax on railroads, payable by a statute at a certain time, does not in the absence of statutory provisions, bear interest if not paid when due, nor can such interest be collected as damages." (Ky. C. R. Co. vs. Pemdleton, 2nd S. W. Rep. 176; State vs. S. W. R. R. Co., 70 Ga. 11; 7th Vol. Rapalje & Mack's Digest Railway Law, page 937.)

"Taxes are not debts within the legal meaning of the term, and in the absence of a statutory provision interest cannot be received thereon." (Lane County vs. Oregon, 7 Wallace, 80; L. & N. Co. vs. Com., 41 A. & E. R. Cases, 595; Perry Co. vs. Selma & M. Road, 65 Ala. 391; Rapalje & Mack's Digest, 995; Merriweather vs. Garnett, 102 U. S. 513).

Article 202 of the Constitution declares that the taxing powers may be exercised by the General Assembly for State purposes and municipal corporations, under authority granted to them by the General Assembly, for parish and municipal purposes.

Article 204 declares that the taxing power shall be exercised only to carry on and maintain the government of the State and the public institutions thereof, to educate the children of the State, to pay the principal and interest of the public debt, to suppress insurrection, repel invasion, or defend the State in time of war, to supply the citizens of the State who lost a limb or limbs in the military service of the Confederate States with substantial artificial limbs during life, and for levee purposes as herein provided. By the 209th Article the State tax on property for all purposes whatever, including expenses of government, schools, levees and interest, shall not exceed in any one year six mills on the dollar of its assessed valuation if the ordinance regarding the bonded debt of the State is adopted and ratified by the people, and if said ordinance is not adopted and ratified by the people, said State tax for all purposes aforesaid shall not exceed in any one year five mills on the dollar of the assessed valuation of the property, and no parish or municipal tax for all purposes whatsoever, shall exceed ten mills on the dollar of valuation, provided that for the purposes of erecting and con-

294    SUPREME COURT OF LOUISIANA.

R. R. Cos., Receiver, vs. Sheriff et al.

structing public buildings, bridges, and works of public improvement in parishes and municipalities, the rates of taxation herein limited may be increased when the rate of such increase and the purpose for which it is intended shall have been submitted to a vote of the property tax payers of such parishes or municipalities entitled to a vote, under the election laws of the State, and a majority of same voting at such election shall have voted therefor.

Article 242 declares "That the General Assembly shall have power to enact general laws authorizing the parochial or municipal authorities of the State, under certain circumstances, by a vote of the majority property tax payers in number and in value, to levy special taxes in aid of public improvements or railway enterprises, provided that such tax shall not exceed the rate of five mills per annum nor extend for a longer period than ten years."

In Fullilove vs. Police Jury of Bossier Parish (51 Ann. 359), we were called upon to examine and, to some extent, pass upon the provisions of the Articles of the Constitution herein copied, and declared that the special taxes referred to in Article 242 constituted a class of taxes separate and distinct from those referred to in Articles 202-204 and 209; that the parochial authorities, in levying those taxes, occupied a different position from that which they occupied in levying taxes strictly and properly "parochial;" that in this latter matter they were acting rather as public agencies, provided by the Constitution for carrying out the will of the tax payers of the different parishes, when called into existence and made known as provided for by the Constitution in Article 242 and in the statutes enacted thereunder.

We think it plainly appears that these special taxes, when levied, are not levied as the result of the will, on that subject, of the police juries, acting as legislative bodies for and on behalf of the parishes, but that they are levied in enforcement of the will of the majority of the tax payers, evidenced by their vote at a special election called for that purpose; the said expressed will of the majority bearing down by force of constitutional power and authority the expressed will of the minority. It will be seen that the levy of the tax is partly voluntary and partly coerced; that, to the extent that it is voluntary, it is the result of the individual wills of a majority of the taxpayers, brought to bear directly upon the particular subject matter through their own votes; and that to the extent that it is coerced it is the result of the individual wills of the minority brought to bear upon the particular

subject matter, having been made to yield to that of the majority, as the will of the minority of creditors in a respite proceeding is overborne and made to yield to that of the majority.

These special taxes, therefore, owe their origin to a different source through an entirely different process from that of the general taxes, voted .for and levied by the police jury acting as a legislative body. They not only differ from the general taxes in these respects, but the object to which the money levied by such taxation is to be applied, is different. It is no part of the governmental duty of police juries to construct railroads, as it is to build a courthouse or a jail, or to construct bridges. A courthouse, a jail or a bridge, when built, remains in kind and becomes the property of the parish.

A railroad, when built through the aid of special taxes, remains the property of the corporation building the same; it passes out and beyond the control of the police jury, and the benefit received by the people of the parish, through their contribution, is only indirect and consequential. While the amounts levied for that purpose are in the *nature of taxes,* inasmuch as they are imposed, to some extent at least, under governmental authority, they are not taxes in the sense which that term bears with reference to strictly governmental taxes. They are contributions to the attainment of a certain purpose, but removed from being strictly donations by reason of their partially compulsory character. They are contributions made *in invitum* under constitutional authority based upon presumed benefits to be received.

In Sargent & Company vs. Tuttle, 67 Conn. 162 (32 L. R. A., page 823), the Supreme Court of Connecticut, referring to a claim made for interest upon an amount due on an assessment for a sewer, said: "The second proposition to the effect that a tax carries no interest as such by way of penalty for non-payment, unless the law so provided, is, we think, a correct statement of the law. Most of the cases in which interest may be received, under our law in the *absence of any statute* regulating the matter, are enumerated in Selleck vs. French, 1 Conn. 32-6, Am. Dic. 185, and clearly, assessments of this kind, do not come within any of the classes there enumerated. It will, we think, also be found true, that whenever taxes have carried interest, whether as such or by way of penalty, it has been by virtue of some *statutory provision* to that effect. And this is as it should be. At best, a tax is a burden, a necessary one it is true, but none the less a burden imposed on the

taxpayer without reference to his consent, and it seems reasonable to hold that any increase of that burden by way of penalty or otherwise should be expressly made by the power which imposes, and that until the legislative will to increase the burden by the addition of interest has been clearly expressed, interest should not be allowed. This conclusion, which on principle seems reasonable, is supported more or less strongly by the following authorities (citing a large number of authorities).

"We think the rule thus applied in the case of taxes as ordinarily laid down is applicable to the kind of taxes here in question, and that unless some public statute or the city charter expressly, or by clear implication, authorized the collection of interest, it was not collectible.

"The remaining question, then, is whether such authority was conferred upon any one, either by some public statute or by the city charter. At the time those assessments were made in 1873, and ever since, interest was and has been collectible on ordinary overdue taxes in New Haven, under the provisions of the General Statutes of 1866, which are still in force in that city; but it is not claimed, nor can it be reasonably claimed that the *aforesaid provisions are applicable to the assessments here in question, for those provisions clearly relate solely* and only *to ordinary taxes* laid in the *ordinary way* by the city or town of New Haven, and although we hold an assessment of benefits to be a tax, it is clearly not a tax of the kind specified *in those provisions.*"

It is easily understood why penalties for non-payment of ordinary governmental taxes, when due, should be exacted by law. The necessity for money to carry forward properly the functions of government and the consequences to the public which would unavoidably result from the failure of citizens to comply promptly with the obligation to pay their taxes to the government, make it imperative to resort to very severe methods for enforcing the same. The high rate of interest imposed by way of penalty upon delinquent taxpayers is not imposed to enrich the State, but to coerce the payment of the tax. Considerations of this character are entirely absent as grounds for enforcing the payment of the special taxes by property owners due by them in aid of a railroad enterprise.

It cannot be reasonably supposed that the General Assembly or the parochial authorities in enacting laws or ordinances compelling the prompt payment of taxes, through the imposition of heavy penalties for delay in that respect, could or would intend that provisions of that

character should be made available by private corporations for the enforcement of contributions to itself.

We are of the opinion that the provisions of Section 39 of Act 85 of 1888, that "all taxes unpaid on the first of December of each and every year shall bear interest at the rate of two per cent. per month from said date," do not apply to taxes levied in aid of a railroad enterprise, under Article 242 of the Constitution of 1879.

We are also of the opinion that the sixth section of Act No. 35 of 1886 providing that "the police jury and authorities shall have the same power to enforce and collect any special taxes that may be authorized by such elections (special elections under Article 242 of the Constitution) as is or may be conferred by law upon them for the collection of other taxes," refers simply to the mode or method of the collection of taxes. (Miramon vs. City, 52 Ann. 1628.)

Assuming the right of the General Assembly or the police jury to extend to the railroad corporations the benefit of such provisions, the conferring of such a right would have to be expressed in the clearest and most positive language. A comparison of the amounts due by the plaintiff in injunction for the special taxes themselves, with the amounts claimed as penalties for delinquency in payment of the same, will show results which neither the Legislature nor the police jury could have possibly intended.

It is not claimed, nor pretended, that the ordinances of the Parish of Richland mentioned in any way or at any time in connection with the special tax in aid of the New Orleans and Northwestern Railway Company, the matter of two per cent. a month by way of penalties or interest upon the taxes. We have examined the ordinance of the police jury (the only one in the record) levying the special tax for the year 1890. We assume that ordinances of a similar character were enacted each year, after the year 1890, and that copies of the same were placed in the hands of the sheriff of Richland, ex-officio tax collector, and constituted the legal warrant or authority for his action in the premises.

The particular ordinance we have referred to declared it to have been ordained by the police jury of Richland:

"1st.—That a special tax of five mills per annum on the dollar for the period of ten consecutive years, on the taxable property of Richland Parish, in aid of the New Orleans and Northwestern Railway Company, be levied, beginning in and with the current year (1890),

and that the special tax of five mills on the dollar which is levied on the taxable property be extended on the rolls of 1890, and ordered to be collected and paid over to the New Orleans and Northwestern Railway Company, its successors or assigns.

"2nd.—Further ordained that all of said tax when collected shall be paid over to the New Orleans and Northwestern Railway Company, its successors or assigns, and that the ordinance take effect from its passage."

There is nothing in this ordinance which either directs the tax collector to collect two per cent. per month interest upon the special taxes or which authorizes him on his own motion to extend this penalty upon the rolls and collect the same.

Cooley, in his work on Taxation, Chapter 14, on the subject of the "Collection of the Tax," says:

"When the penalty is imposed in the course of the proceedings to assess, and by officers who for that purpose exercise a *quasi judicial* authority, and where the party is given the opportunity to be heard and contest his delinquency, either before the assessing officer or in some form of appeal, the imposition of a penalty does not seem to be out of harmony with the general spirit or general course of tax proceedings, and perhaps may be sustained on the same principles that support tax laws in general. But we should doubt the right to make any finding by such tribunal conclusive, and there may be reason to question whether for payment of a tax it is competent for the government to authorize any merely ministerial officer to impose a penalty, though a reasonable interest and the expenses and costs occasioned by the delay might doubless be demanded and collected. The point is not left in a very satisfactory state on the authorities." (See Scammon vs. Chicago, 44 Ills. 269-278; Wawwatosa vs. Gunyon, 25 Wis. 271-276.)

The sheriff, ex-officio tax collector in the present case, was charged at the utmost with the duty of collecting the taxes, he was ordered to extend upon his rolls, with legal interest thereon, from the dates at which they respectively became due; the New Orleans and Northwestern Railway Company was not authorized to give him, nor was he authorized to receive from it, instructions to impose a penalty of two *per cent.* per month upon the taxpayer.

We are of opinion that the tax collector was without authority to demand of the Vicksburg, Shreveport and Pacific Railroad Company

two per cent. interest per month on the amount of the different annual taxes from the time they respectively fell due; that it was justified in resisting such a demand and in enjoining him from enforcing the same. The court is of the opinion, however, that the plaintiff company owed legal interest on such annual taxes from the time they respectively fell due until paid. The liability for this interest resulting not from any action of the sheriff himself, nor of the New Orleans and Northwestern Railroad Company, nor the parochial authorities, but from the terms of the *State law,* which, in *Article·1938,* Revised Civil Code, declares that "all debts shall bear interest at the rate of five per cent. per annum from the time they become due, unless otherwise stipulated."

While it may be true that the liability for the tax does not fall under the strict definition of the word "debt", yet the relations between the parties—the party owing the taxes and the party to whom they are due, are deemed sufficiently contractual in character to warrant the court in holding that legal interest is due upon the annual taxes from the date of their respective maturities. Such being the case, the tender made by the plaintiff in injunction was insufficient. The plaintiff company owes these different taxes with legal interest thereon from the time they respectively became exigible until paid.

We now direct our attention to the claims set up by the defendants in their answer. There are two demands contained therein, one covering a demand for interest, attorney's fees, resulting from the first injunction, and the second claiming interest, attorney's fees, damages, etc., resulting from the last injunction. A question has been raised as to whether these demands having been disallowed by the District Court and defendants not having appealed themselves are before us on the present appeal through a prayer for an amendment of the judgment below.

Appellees declare that particular question was passed upon in *Lange vs. Barencro,* 32 Ann. 696-699.

The claim for damages as resulting from the second injunction is incidental to and directly connected with plaintiff's proceedings in the present suit; it falls therefore under the doctrine announced in the case cited. The claim for damages, etc., resulting from the first injunction occupied the same relation to that particular proceeding which the other does to the second, but instead of passing upon it when

judgment was rendered in the first suit, the rights of the parties touching the same, were reserved.

By that action it became the subject of a separate and independent suit or demand, and that is the position which it occupies in the present action. It was incidental to the first injunction, but not to the second. From that standpoint we think defendant should have appealed from the judgment disallowing it in the present suit.

It can not be altered or reversed by simple prayer for amendment.

The judgment appealed from is erroneous and it is hereby ordered, adjudged, and decreed that the same be, and the same is hereby annulled, avoided and reversed.

It is now ordered, adjudged and decreed that the injunction which issued herein in the District Court in favor of the plaintiff in injunction be, and the same is reinstated and perpetuated to the extent of restraining the sheriff and ex-officio tax collector of the parish of Richland from enforcing payment of the five mill tax referred to in the pleadings herein, on the property of the plaintiff in injunction, for an amount over and above the said taxes, with legal interest thereon from the date at which payment of said taxes became respectively due, until paid, with costs and commissions. It is further ordered, adjudged, and decreed that said injunction in so far as it restrains the said sheriff and tax collector from enforcing payment of said taxes, together with legal interest thereon, from the dates at which payment became respectively due, until paid, with costs and commissions be, and the same is dissolved, and the said sheriff and tax collector is hereby adjudged and decreed to enforce payment of said taxes with said legal interest thereon, until paid with costs and commissions, and he is directed to proceed with the collection of said taxes and legal interest, costs and commissions.

It is further ordered, adjudged, and decreed that the defendants in injunction pay the costs in the District Court, also the cost of appeal.