7507

KIMBRO & THERIOT,
APPELLANT.

VS

No. 7507.

H. C. WARMOTH.

April 17th, 1919.

CHARLES F. CLAIBORNE, JUDGE.

Petitioners claim of defendant two siphons, one centrifugal pump, two sections pipe, two discharge pipes, 1 scale, 200 feet of pipe and one Rice Harvester; all of the value of $1200; they allege that they left the same on the Sarah Plantation, belonging to the defendant, sometime in January, 1916, with his consent and with the agreement that there were to be no charges until they cared to send for them; that they have demanded the return of these implements from the defendant who has refused. They pray to be recognized as owners of said implements, and that the defendant be ordered to return the same to them.

The defendant admitted having in his possession the two siphons, the centrifugal pump, the scale, but denied having the pipes unless they formed part of the siphons, and denied any agreement to return them to plaintiffs without charge; that plaintiffs left the rice harvester exposed to the weather and that it is now of no value; that plaintiff left the pumps on the batture and it became imbedded in the mud; that defendant dug it up and removed it to a place of safety at a cost of $25.

Assuming the position of plaintiff in reconvention the defendant, H. C. Warmoth, alleges that on November 1st, 1914, he leased to the plaintiffs, Kimbro and Theriot, three plantations known by the names of Idlewild, Sarah and Live Oak, for the year 1915; that one of the conditions of the lease was this:

"It is agreed that lessees shall put seed cane down in the fall, enough to plant 180 arpents and prepare the land in the fall for planting 180 arpents in cane";

that the said Kimbro and Theriot did not put down enough sugar cane to plant 180 arpents; that the plant cane was covered,

and H. C. Warmoth was unable to ascertain its quantity until the time of planting, when it was discovered that the seed cane left was only sufficient to plant 85 arpents leaving a deficit of 95 arpents; that Kimbro and Theriot should have put down five tons for every arpent or 475 tons for the 95 arpents; that seed cane had a value of $5 per ton, or $2375.00 for the 475 tons; for which the plaintiffs are indebted to the defendant, and which they refuse to pay, notwithstanding demand;

that Kimbro and Theriot borrowed of defendant two cane wagons which they were to return after the harvest of the crop, but which they failed to do until December 1917; that they therefore owe defendant $30 per wagon, or $60, for the rental of said two wagons;

that Kimbro and Theriot also owe the defendant $25 for digging up and storing up the pump;

that Kimbro and Theriot also owe the defendant a balance of $12.70 on the lease of the Cedar Grove Plantation;

that Kimbro and Theriot also owe the defendant $50 for storage of the two siphons and of the pump;

that the amount due by plaintiffs to defendant therefore amounts to $2522.70;

that defendant retained possession of the implements claimed by the plaintiffs for the purpose of securing the payment of his claims, and that he advised the plaintiffs that he would deliver said implements to them, whenever they paid him his claims;

Wherefore defendant prayed that plaintiffs' demand be rejected, and that he have judgment against them, in solido, for $2522.70 with legal interest from judicial demand; that his lessor's privilege upon the implements claimed by plaintiffs and his right to retain them until his claim was paid be recognized, and that they be sold to pay his claim.

This answer was filed May 18th, 1918.

There was judgment "in favor of defendant H. C. Warmoth, and against Kimbro and Theriot, dismissing said plaintiffs' suit at their cost".

Kimbro and Theriot, plaintiffs, have appealed ~~only from the judgment rejecting their demand; they could not appeal~~ *only from the judgment rejecting their demand; they could not appeal* *from the judgment in their farm rejecting defendants reconventional demand.*

316

*Defendant* has not *appealed from the judgment rejecting his reconventional demand. They were practically two judgments.*

In this Court, defendant and appellee has filed an answer to the appeal in which he alleges that the judgment "is contrary to the law and the evidence in that said judgment did not pass upon the reconventional demand of defendant H. C. Warmoth against Kimbro and Theriot, G. E. Kimbro and E. R. Theriot, individually and in solido, in the full sum of $2522.70 with legal interest from judicial demand, and that said judgment should be amended by decreeing in favor of H. C. Warmoth, defendant in the original action and plaintiffs in reconvention, and against the said Kimbro and Theriot, G. E. Kimbro and E. R. Theriot, individually and in solido, in the full sum of $2522.70 with legal interest from judicial demand".

As the defendant, in his sworn answer and in his testimony, admits that the plaintiffs are the owners of the implements by them claimed, we must interpret the judgment in favor of the defendant as one recognizing his right to retain possession of plaintiffs' implements in payment of the amount due to him by the plaintiffs -, and otherwise rejecting defendant's reconventional demand.

It is true that the judgment does not, in so many words, reject the reconventional demand, but it is evident that it means as much.

A judgment in favor of plaintiff is a necessary denial of the reconventional demand. 4 La., 40; 6 A., 222; 14 A., 860; 35 A., 365; 38 A., 571.

A judgment in favor of defendant's reconventional demand is necessarily one rejecting plaintiffs' demand. 19 A., 98; 14 A., 564, 565.

A judgment in favor of defendant settles all points in controversy; it rejects the plaintiff's demand and the defendant's reconvention. 19 A., 304.

The silence of a judgment concerning certain claims in contestation is equivalent to a rejection of them. 32 A., 836; 35 A., 366; 36 A., 398, 722; 38 A., 701, 702.

But the defendant has not appealed from the judgment rejecting his reconventional demand. He cannot have the judgment

317

revised by merely answering the appeal *taken by plaintiffs from another judgment dismissing their demands.* In Levert vs Berthelot, 127 La., 1004, the Court said on page 1013:

"Where, by the verdict of the jury, the demand of the plaintiff was nonsuited as was also the reconventional demand of the defendant, and likewise the demand of the intervenor, and thereupon the plaintiff appealed, but the defendant and intervenor did not, the latter, as appellees, are not entitled, on the appeal of the plaintiff, to bring before the Court for adjudication on the appeal the demand of the defendant in reconvention and that of the intervenor on its intervention under a prayer for an amendment of the judgment appealed from. Those parties are not seeking an alteration of a judgment which the plaintiff has obtained in his favor, but the absolute reversal of the judgments which had been rendered against them respectively, on their individual demands". See also 1st. Mc Gloin, 78; 21 A., 714.

The cases of Lange vs Baranco, 32 A., 697, and Vicksburg R. Rd. vs Traylor, 104 La., 284 (299), are not in conflict with the above cases. In both these two cases the plaintiffs issued an injunction and the defendants reconvened for damages caused by the illegal issuance of the writ. There was judgment against plaintiffs and against defendants in both cases. Plaintiffs in both cases appealed;- defendants did not. Defendant in the first case answered the appeal and prayed for an amendment in his favor. The Court allowed it, but failed to refer to the case in the 21 A., 714. In the second case, 104 La., 284 (299), the Court said:

"There are two demands contained therein, one covering a demand for interest, attorney's fees, resulting from the first injunction, and the second claiming interest, attorney's fees, damages etc. resulting from the last injunction. A question has been raised as to whether these demands having been disallowed by the District Court and defendants having appealed themselves are be-

318

fore us on the present appeal through a prayer for
an amendment of the judgment below.

" Appellees declare that particular question was
passed upon in Lange vs. Barencro, 32 Ann. 696-699.

"The claim for damages as resulting from the second
injunction is incidental to and directly connected with
plaintiff's proceedings in the present suit; it falls
therefore under the doctrine announced in the case cited.
The claim for damages, etc., resulting from the first
injunction occupied the same relation to that particular
proceeding which the other does to the second, but in-
stead of passing upon it when judgment was rendered in
the first suit, the rights of the parties touching the
same were reserved.

"By that action it became the subject of a separate
and independent suit or demand, and that is the posi-
tion which it occupies in the present action. It was
incidental to the first injunction, but not to the sec-
ond. From that standpoint we think defendant should have
appealed from the judgment disallowing it in the present
suit.

"It cannot be altered or reversed by simple prayer
for amendment".

We do not think that the reconventional demand in this
case was "necessarily connected with and incidental to the" main
demand, within the meaning of the above decision and we are,
therefore, of opinion that in order to bring up the matter on
appeal before us, the plaintiff in reconvention should have
brought the matter up by appeal, and could not do so by mere
answer to the appeal. C. P., 375.

It seems to us, besides, that these two cases have been
overruled by the case of Levert vs. Berthelot; and this last
case appears to us more in consonance with law and jurisprudence.

The only question therefore left for our examination is
the correctness of the judgment in favor of the defendant dis-
missing the main demand. We must not reverse the judgment unless
we are satisfied that it is wrong.

We have already seen that the plaintiff, by their lease,

were obligated to put down seed cane in the fall enough to plant 180 arpents.

The testimony establishes, beyond a doubt, that the plaintiffs, in the fall of 1905, planted 60 acres; that with the cane which they left in windrow, the defendant planted at most 38 acres in the spring of 1916, and sold enough cane to a neighbor to plant five acres, making in all 103 acres, leaving a deficit of 77 acres.

The defendant testifies that it requires four or five tons of cane to plant one acre, according to the quality of the cane and that is not contradicted; to plant 77 acres would therefore require at least four times that number of tons or 308 tons; the evidence as to the value of a ton of cane at that time varies from $2.75 according to the plaintiffs to $4.63 according to the defendant. Taking plaintiffs' own figures the 308 tons would be worth $847.00. The plaintiffs would therefore owe the defendant that sum as part of their obligations under the lease.

Mr. Theriot testifies that he paid for the pump $325; for the scale $160, and for the rice thresher $80. Mr. Kimbro says that they purchased a lot implements, including the siphon, for about $450, out of which they sold the boiler for $250, leaving the value of the siphon at $200, fixing the value of plaintiffs' implements at $765.00. The amount of defendant's claim therefore exceeds the value of the implements of the plaintiffs detained by him and upon which he has the lessor's privilege and right of detention, by at least $82.

The plaintiffs contend that the deficiency of cane was due to the lack of care given to it by the defendant after they had left the plantation on January 1st, 1916. The evidence does not satisfy us that such was the case.

They also complain that the cane was planted too late towards the end of March, when it should have been planted in January or February. We are not satisfied that the deficiency of cane was caused by that delay; we believe it was owing rather to the quality of the cane in windrow.

They also argue that the plaintiffs and the defendants had a settlement of each other's claims in January 1916. That is true. But that settlement could not have had in contemplation

the necessary quantity of cane which could be ascertained only long after in the spring when the cane was dug out of the windrow and planted long after the settlement.

They also plead that the defendant has failed to put them in default as a prerequisite to recovering damages for a breach of the contract. The defense does not involve a claim for damages. It is a demand for specific performance of the plaintiffs' obligations under the lease; in other words, a demand for payment.

"By payment is meant, not only the delivery of a sum of money when such is the obligation of the contract, but the performance of that which the parties respectively undertook whether it be to give or to do". C. C., 2131 (2127).

"Although we understand commonly by the word payment only that method by which those who are indebted in sums of money acquit themselves of their obligations by paying money; yet we may give the name of payment in general to all the methods by which debtors acquit themselves of their obligations. For whatever frees the debtor from his obligation is in lieu of payment". 1 Domat (Strahan) p. 891 ⸗ 2240.

"Real payment is the real performance of what one has bound himself to give or to do. When the obligation is to do something, the real payment of such an obligation consists in doing the thing which one has bound himself to do. When the obligation is to give something, the payment is the giving and transferring the ownership of the thing". Pothier on Oblig. ⸗ 494.

"In its most general acceptation, and in its application to the very object of the engagement, the word payment signifies the performance of the duty which forms the subject-matter of the obligation, whether it consists in giving, in doing, or in not doing. It is said of an obligor that he pays, when he executes what he has promised; solvere dicimus eum qui fecit quod facere promisit". L., 176, De Verb. sign. (We say that he

321

pays who does what he has promised to do). 5 Larombiere on Art 1235; 2 Delvincourt. p. 161 - 7; Toull. 5 5 p. 10; 12 Duranton p. 12 ⊆ 9.

"The law dows not require a previous demand, when the suit is one of revendication, or to enforce the performance of the principal obligation resulting from a contract, other than those for the payment of money where an amicable demand is required, and that merely in relation to costs or interest ex mora". 16 La., 586; 24 A., 570.

Although the judgment of the District Court may not be technically correct it nas done substantial justice between the parties and it is therefore affirmed.

April 17th, 1919.